Jay M. TIMMONS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 12A04–9904–CR–165.

Court of Appeals of Indiana.

Sept. 7, 2000.

Richard D. Martin, Miller & Martin, Frankfort, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, James B. Martin, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION ON REHEARING

ROBB, Judge

Jay Timmons petitions this court for rehearing of our decision dated February 7, 2000. In that opinion, we held, in part, that the telephonic arrest warrant by which Timmons was arrested in his home was fatally defective, but that the exclusionary rule did not bar evidence revealed pursuant to the arrest. *Timmons v. State,* 723 N.E.2d 916, 920–22 (Ind.Ct.App.2000). Thus, we concluded that the trial court did not err in denying Timmons' motion to suppress. We grant Timmons' petition for rehearing to revisit the application of the exclusionary rule to the facts of this case.

Briefly, the facts surrounding Timmons' arrest are that a Frankfort Police Department officer received a dispatch regarding two hit-and-run accidents that had recently occurred. Several witnesses at the scene identified Timmons as the driver of the hit-and-run vehicle. The officer determined that the car parked in front of Timmons' residence matched the description of the hit-and-run vehicle, and he also observed property damage to the car. Timmons' sister confirmed that Timmons was inside the residence and refused to come out. Failure to stop after an accident is a misdemeanor charge. Thus, the investigating officer procured an arrest warrant for Timmons via a telephonic conference with a Clinton County judge. The police thereafter entered Timmons' home and arrested him. Upon encountering Timmons inside his home, the officers ob-

served that he appeared to be intoxicated, and asked him to submit to a portable breath test, which he declined. Ultimately, Timmons was charged with one count of operating a vehicle while intoxicated, a Class D felony, one count of driving with a suspended license, a Class D felony, and two counts of failure to stop after an accident, Class A and B misdemeanors, respectively.

Timmons filed a motion to suppress, contending that the telephonic arrest warrant was invalid, that the arrest was illegal, and seeking to suppress any evidence resulting from the warrantless arrest. The trial court denied the motion. We held that the arrest warrant was indeed defective because virtually none of the statutory requirements were met, and we characterized the warrant as "nonexistent." 723 N.E.2d at 920. We thus agreed with Timmons that the arrest inside his home violated his Fourth Amendment rights. *Id.* However, we held that the challenged evidence was nonetheless admissible under the Supreme Court's decision in *New York v. Harris,* 495 U.S. 14, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990).

In *Harris,* the Supreme Court held that incriminating statements made by a murder suspect following an illegal arrest in his home were not subject to the exclusionary rule. Timmons argues on rehearing that our application of *Harris* is erroneous because *Harris* applies only to Fifth Amendment statements and should not have been extended to include tangible physical evidence. We disagree with Timmons' premise that *Harris* is applicable only to cases involving statements. The facts in *Harris* were such that the Court was only required to determine the admissibility of a statement obtained after an illegal, warrantless arrest in the defendant's home; however, we do not believe application of the rule espoused need be limited only to statements. *See* 495 U.S. at 20, 110 S.Ct. 1640 ("Even though we decline to suppress the statements made outside the home following a [warrantless and nonconsensual entry into a suspect's home in order to make a routine felony

arrest], the principal incentive to obey [the rule] still obtains: the police know that a warrantless entry will lead to the suppression of *any evidence found, or statements taken,* inside the home.") (emphasis added).

■ Notwithstanding our continued belief that *Harris* could apply to this case dealing with tangible physical evidence, on reconsideration, we believe that *Harris* is distinguishable from this case and should not be used as authority for allowing the evidence obtained pursuant to an illegal arrest. In *Harris,* the defendant was suspected of murder, and the police went to his home without a warrant to question him. The defendant was Mirandized and admitted to the murder. He was then arrested and taken to the police station, where he was again Mirandized and signed an inculpatory statement. He was Mirandized a third time and videotaped during an incriminating interview with the district attorney despite having indicated that he wanted to end the interrogation. The first and third statements were suppressed; however, the Supreme Court allowed the second statement to stand because even though there is case law holding that the Fourth Amendment prohibits the police from making a warrantless and nonconsensual entry into the home in order to make a routine felony arrest even where there is probable cause to make the arrest, *see Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), "nothing in the reasoning of [*Payton* ] suggests that an arrest in the home without a warrant but with probable cause somehow renders unlawful continued custody of the suspect once he is removed from the house." *Harris,* 495 U.S. at 18, 110 S.Ct. 1640.

■ There are at least three important differences between *Harris* and this case. First, the police in *Harris* had probable cause prior to the arrest to believe that the defendant had committed a felony, whereas prior to the arrest in this case, the police had, at best, probable cause to believe that Timmons had committed two

misdemeanors. "[A] warrantless arrest is permissible if a misdemeanor is committed in the officer's presence or, if, at the time of the arrest, the officer has probable cause to believe that the defendant has committed a felony." *Foster v. State*, 633 N.E.2d 337, 346 (Ind.Ct.App.1994). *See also* Ind.Code § 35-33-1-1. Thus, setting aside for a moment the fact that the arrests took place in the home, and assuming that the events in *Harris* had occurred here in Indiana, the police in *Harris* would have had every right to arrest the defendant without a warrant because they had probable cause that he had committed the felony offense of murder. However, unless the officers had personally witnessed Timmons' alleged failure to stop for an accident, they were required to have a warrant in order to arrest him. The fact that the officers had or could have established probable cause of a felony offense *after* the arrest is not sufficient to justify an otherwise illegal arrest. The officers needed to have probable cause *at the time of the arrest* in order to obviate the warrant requirement. Thus, the officers' continued custody of Timmons for the misdemeanor offenses, as well as any other offenses subsequently discovered, pursuant to the "nonexistent" warrant was unlawful.

Second, in *Harris*, the officers had probable cause to believe that the defendant had committed a murder, arrested him for that crime, and the statements which were at issue concerned that crime. Thus, the officers did not learn anything new during their custody of the defendant. Here, the officers had, at best, probable cause to believe that Timmons had failed to stop after two accidents; however, upon arresting him pursuant to the invalid warrant, the officers observed what they believed to be Timmons' intoxicated demeanor, which would have been unknown to them had they not entered his home and subjected him to an illegal arrest.

Third, the holding in *Harris* was justified in part by the fact that the reason for the rule requiring a warrant to enter a home is to protect the home, and because

the statement which was obtained in the defendant's home, as opposed to that obtained elsewhere, was excluded, the purpose of the rule was vindicated. Here, the intoxication evidence was obtained solely as a result of the officers' unlawful entry into Timmons' home. Failing to suppress such evidence does not advance the purpose of the rule, and we decline to facilitate the failure to abide by the warrant requirements by allowing such evidence to stand.

██ In *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the United States Supreme Court held that the exclusionary rule does not require the suppression of evidence obtained in reliance on a defective search warrant if the police relied on the warrant in objective good faith. However, the *Leon* rule will not save police conduct in certain situations, including where the magistrate is misled by information in the probable cause affidavit "that the affiant knew was false or would have known was false except for his reckless disregard for the truth," and where the warrant is based on a probable cause affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923, 104 S.Ct. 3405. Indiana has codified the "good faith exception" to the exclusionary rule at Indiana Code section 35-37-4-5. The statute also provides that the exclusionary rule does not exclude evidence obtained in good faith. For purposes of this case, evidence is obtained in good faith if it is obtained pursuant to "a search warrant that was properly issued upon a determination of probable cause by a neutral and detached magistrate, that is free from obvious defects other than nondeliberate errors made in its preparation, and that was reasonably believed by the law enforcement officer to be valid...." Ind.Code § 35-37-4-5(b)(1)(A).

██ We note that the good faith exception could not save the search conducted herein, as we held in our previous opinion

that there was a "near total failure to comply" with statutory warrant procedures in this case. *Timmons,* 723 N.E.2d at 920. In fact, three of the specific failures cited in our opinion concerned Officer Mitchell: he did not read from a warrant form as required by the statute; did not affix Judge Smith's signature to the warrant (although Judge Smith apparently did not direct him to do so); and did not certify the audiotape and transcript of the telephonic warrant conference. *See id.* Under such circumstances, the warrant was not "free from obvious defects," and the police, and Officer Mitchell in particular, could not have had a good faith belief that the warrant was valid.

It is obvious that police could not have arrested Timmons in his home or elsewhere without a valid warrant, and that evidence of his alleged felonious driving while intoxicated was obtained as a direct result of the police entering his home without a valid warrant in violation of his Fourth Amendment rights. *See Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) ("Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'") (citation omitted). Here, the evidence which Timmons sought to have suppressed was only discovered as a result of the illegal entry into his home, and thus, we do not believe, as we originally held, that *Harris* saves application of the exclusionary rule. Thus, we reverse the trial court's denial of Timmons' motion to suppress.[1]

We have carefully considered the error alleged by Timmons and grant the petition for rehearing. We vacate that part of our opinion which concerns Timmons' motion to suppress, and reverse the trial court's denial of his motion.

BROOK, J., and NAJAM, J., concur.

---

1. Also, although not raised by Timmons, we are troubled by the timing of the evidence of intoxication in relation to the driving: there is no indication that the police reasonably suspected Timmons was intoxicated before they entered his home. Thus, it is entirely possible that Timmons started drinking upon arriving home, and was not, in fact, intoxicated at the time he was driving his car. However, given our resolution of the motion to suppress issue, we need not attempt to discern the sequence of events.