STATE of Indiana, Appellant–Plaintiff,

v.

Joseph STRAUB, Appellee–Defendant.

No. 41A01–0101–CR–23.

Court of Appeals of Indiana.

May 30, 2001.

Steve Carter, Attorney General of Indiana, Timothy W. Beam, Deputy Attorney General Indianapolis, IN, Attorney for Appellant.

## OPINION

ROBB, Judge.

The State brings this interlocutory appeal of the trial court's order granting Joseph Straub's motion to suppress his statements to the police. We reverse.

### Issue

 The State raises the following restated issue for our review: whether the trial court properly granted Straub's motion to suppress.[1]

### Facts and Procedural History

The facts reveal that around 3:40 a.m. on January 26, 1999, Officer Grable was sitting in his patrol car when he observed a truck with an attached snowplow closely following another truck. Thereafter, the driver of the lead trunk informed Officer Grable that the individual driving the truck with the attached snowplow was driving erratically and had repeatedly dropped the snowplow on the road causing sparks as the blade grazed the pavement. Officer Grable then searched for the truck but did not activate his sirens or emergency lights. A short time later, Officer Grable observed the truck traveling away from him without any lights. He attempted to follow the vehicle but lost sight of the truck as it turned onto another street. Thereafter, Officer Grable tried to cut the truck off but the vehicle never emerged from the street upon which Officer Grable had earlier seen the truck travel.

Subsequently, Officer Grable saw Straub run down a hill, lose his footing, and fall to the ground near the area where he had earlier lost sight of the truck. Officer Grable yelled "stop, police," but Straub got up from the ground and continued to run away from him. Straub continued to ignore Officer Grable's audible commands to stop and eventually entered an apartment later determined to be his residence. Officer Grable, who was not far behind, drew his weapon, entered the apartment, and ordered Straub to come outside. As Straub emerged from the apartment Officer Grable noticed a strong odor of alcohol emanating from Straub. Subsequently, Straub was placed in handcuffs and transported to the local jail where a chemical breath test revealed that he had a .17% blood alcohol content.

Consequently, the State charged Straub with operating a motor vehicle while intox-

---

1. An appellee's brief was not filed in this case. When an appellee fails to submit a brief in accordance with our rules, we need not undertake the burden of developing an argument for the appellee. *Johnson Co. Rural Elec. Membership Corp. v. Burnell,* 484 N.E.2d 989, 991 (Ind.Ct.App.1985). Indiana courts have long applied a less stringent standard of review with respect to showings of reversible error when an appellee fails to file a brief. *Id.* Thus, we may reverse the trial court if the appellant is able to establish prima facie error. *Jones v. Harner,* 684 N.E.2d 560, 562 n. 1 (Ind.Ct.App.1997).

icated[2] and operating a motor vehicle while intoxicated with a prior conviction of operating while intoxicated.[3] On January 26, 2000, Straub filed with the trial court a motion to suppress his post-arrest statements to the police. Following a hearing, the trial court granted Straub's motion to suppress. Subsequently, the State filed a motion to correct error with the trial court, a motion that was later denied. This interlocutory appeal ensued pursuant to Indiana Code section 35–38–4–2.

### Discussion and Decision

The State contends that the trial court abused its discretion in granting Straub's motion to suppress. We agree.

### I. Standard of Review

In reviewing a motion to suppress, we do not reweigh the evidence, but determine if there is substantial evidence of probative value to support the trial court's ruling. *Carter v. State*, 686 N.E.2d 1254, 1258 (Ind.1997). We look to the totality of the circumstances and consider all uncontroverted evidence together with conflicting evidence that supports the trial court's decision. *Haviland v. State*, 677 N.E.2d 509, 513 (Ind.1997).

### II. The Fourth Amendment

We are presented with the question of whether Officer Grable was justified in entering Straub's residence without a warrant. The Fourth Amendment to the United States Constitution and Article I, section 11 of the Indiana Constitution protect citizens from state intrusions into their homes. The Fourth Amendment reads:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no

Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, section 11 of the Indiana Constitution mirrors the Fourth Amendment to the U.S. Constitution. It is axiomatic that the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. United States District Court*, 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972). A principal protection against unnecessary intrusions into private dwellings is the warrant requirement imposed by the Fourth Amendment on agents of the government who seek to enter a residence for purposes of search or arrest. *Welsh v. Wisconsin*, 466 U.S. 740, 748, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984). Thus, searches and seizures inside a home without a warrant are presumptively unreasonable. *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

However, "on occasion the public interest demands greater flexibility than is offered by the constitutional mandate" of the warrant requirement. *Rabadi v. State*, 541 N.E.2d 271, 274 (Ind.1989). Although the warrant requirement is the rule, exceptions to it exist. *Esquerdo v. State*, 640 N.E.2d 1023, 1027 (Ind.1994). These exceptions are "few in number and carefully delineated." *United States District Court*, 407 U.S. at 318, 92 S.Ct. 2125. Exigent circumstances have been found: (1) where a suspect is fleeing or likely to take flight in order to avoid arrest; (2) where incriminating evidence is in jeopardy of being destroyed or removed unless an immediate arrest is made; (3) where a violent crime has occurred and entry by

---

**2.** Ind.Code § 9–30–5–1.

**3.** Ind.Code § 9–30–5–3.

police can be justified as means to prevent further injury or to aid those who have been injured; and (4) in cases that involve hot pursuit or movable vehicles. *Snellgrove v. State*, 569 N.E.2d 337, 340 (Ind. 1991). The burden is on the prosecution to demonstrate exigent circumstances to overcome the presumption of unreasonableness that accompanies all warrantless home entries. *Payton*, 445 U.S. at 586, 100 S.Ct. 1371.

■■■■ The arrest of a person is quintessentially a seizure. *See id.* at 585, 100 S.Ct. 1371. It has long been settled that a warrantless arrest in a public place was permissible as long as the arresting officer had probable cause. *See United States v. Watson*, 423 U.S. 411, 423, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). However, the United States Supreme Court has drawn the line at the entrance of a dwelling, holding that the Fourth Amendment prohibits the police, absent exigent circumstances, from making warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest even when the police have probable cause to do so. *Payton*, 445 U.S. at 576, 100 S.Ct. 1371. Indeed, "[t]here is no question that police are required by the federal constitution to obtain a warrant to arrest a suspect who hunkers down inside his home and refuses to leave or answer the door." *Cox v. State*, 696 N.E.2d 853, 858 (Ind.1998). With regard to minor offenses, the Court has stated that the presumption of unreasonableness which attaches to the warrantless entry by the police into a home is difficult to rebut, and that the government should usually be allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate. *Welsh*, 466 U.S. at 750, 104 S.Ct. 2091. The validity of a warrantless arrest is determined by the facts and circumstances of each case. *Tata v. State*, 486 N.E.2d 1025, 1028 (Ind.1986).

## A. Reasonable Suspicion

■■■■ Our initial inquiry is to determine if Officer Grable had reasonable suspicion to conduct an investigatory stop of Straub as he viewed him running down a hill. An investigatory stop of a citizen by a police officer does not violate that citizen's constitutional rights where the police officer has a reasonable articulable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Probable cause is not necessary. *Id.* What constitutes reasonable suspicion is determined on a case-by-case basis, and the totality of the circumstances is considered. *Baran v. State*, 639 N.E.2d 642, 644 (Ind.1994); *Platt v. State*, 589 N.E.2d 222, 226 (Ind.1992). Reasonable suspicion entails some minimum level of objective justification for making a stop; something more than an inchoate and unparticularized suspicion or hunch, but considerably less than proof of wrongdoing by a preponderance of the evidence. *Cardwell v. State*, 666 N.E.2d 420, 422 (Ind.Ct. App.1996), *trans. denied.* In judging the reasonableness of *Terry* stops, courts must strike a balance between the public interest and the individual's right to personal security free from arbitrary interference by law enforcement officers. *Stalling v. State*, 713 N.E.2d 922, 924 (Ind.Ct.App. 1999). The State has legitimate concerns in deterring driving while intoxicated. *See State v. Garcia*, 500 N.E.2d 158, 161 (Ind. 1986), *cert. denied*, 481 U.S. 1014, 107 S.Ct. 1889, 95 L.Ed.2d 496 (1987).

■■■■ Prior to seeing Straub running down the hill, Officer Grable had observed the truck with an attached snowplow closely following another vehicle. R. 100. Shortly thereafter, a concerned citizen informed Officer Grable that the truck with

the snowplow was driving erratically and that the driver was obviously drunk. R. 111. Anonymous or unidentifiable informants can supply information that gives police reasonable suspicion. *Bogetti v. State,* 723 N.E.2d 876, 879 (Ind.Ct.App. 2000). "A tip will be deemed reliable when an individual provides specific information to the police officers such as vehicle description." *Id.* (citing *Lampkins v. State,* 682 N.E.2d 1268, 1271 (Ind.1997)). It is apparent from the record that the concerned citizen gave a reliable description of the truck to Officer Grable. R. 114. Furthermore, the concerned citizen's identity was known to Officer Grable. R. 110. Thus, the information Officer Grable received from the concerned citizen provided Officer Grable with reasonable suspicion to conduct a traffic stop of the truck with the snow blade.

However, Officer Grable was unable to affect a traffic stop of the vehicle while it was in motion or occupied by the driver. After receiving the tip, Officer Grable located the truck and observed it travel down the street without taillights. R. 117. This bolstered Officer Grable's reasonable suspicion that the driver of the truck with the snowplow was impaired or intoxicated. He was unable to accelerate to high speeds to catch the vehicle because of the icy road conditions. R. 118. Officer Grable lost sight of truck with the snowplow as he attempted to cut the truck off by traveling down a parallel street. R. 122. While searching the area where he had last seen the truck, he observed Straub running down a hill. R. 125.

■ The United States Supreme Court has recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. *Florida v. Rodriguez,* 469 U.S. 1, 6, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984). The Court has recently held that unprovoked flight from a police officer may give rise to reasonable suspicion sufficient for purposes of a *Terry* stop. *Illinois v. Wardlow,* 528 U.S. 119, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000). Headlong flight is the consummate act of evasion: it is not necessarily indicative of wrongdoing, but it is suggestive of such. *Id.* "Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police question." *Id.* Straub's unprovoked flight surely heightened Officer Grable's reasonable suspicion that criminal activity was afoot.

We believe that it was reasonable for Officer Grable to assume that Straub was the individual who had recently driven the truck with the snowplow considering: (1) the time of the incident, around four o'clock in the morning; (2) the few number of people out and about; (3) the close proximity of Straub to where Officer Grable had last seen the truck with the snowplow; and (4) Straub's act of running. We have no doubt that Officer Grable believed that Straub extinguished the lights of his truck in order to evade Officer Grable and that Straub had ditched the truck and fled on foot in an effort to further cloak his retreat. Therefore, Officer Grable had reasonable suspicion to conduct an investigatory stop of Straub as he ran down the hill. However, our inquiry does not end here because Straub was not apprehended in a public place, but rather in his residence.

B. Warrantless Entry into a Home

■ An individual's home traditionally has been regarded as the center of a person's private life, the bastion in which one has a legitimate expectation of privacy protected by the Fourth Amendment. *Griffin v. Wisconsin,* 483 U.S. 868, 883, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987).

The concept that a person's home is regarded as his or her castle has not lost any vitality. *See Wyman v. James,* 400 U.S. 309, 339, 91 S.Ct. 381, 27 L.Ed.2d 408 (1971). At the very core of the Fourth Amendment stands the right of a man to retreat into his own home and be free from unreasonable governmental intrusion. *Silverman v. United States,* 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961). Therefore, the physical entry of a police officer into a home without a warrant for the purpose of search and seizure is presumptively unreasonable. *Payton,* 445 U.S. at 586, 100 S.Ct. 1371. We must now examine the facts and circumstances of the present case to determine whether Officer Grable's warrantless entry into Straub's residence was proper.

After observing Straub run down the hill, Officer Grable ordered him to halt, but Straub ignored the officer's commands and continued to flee. R. 127. Officer Grable uttered more audible commands to Straub to halt but he continued to run until he entered his apartment and shut the door. R. 131. Officer Grable then entered the apartment, ordered Straub out, and ultimately apprehended him. R. 136. It is clear that Officer Grable had probable cause to arrest Straub for resisting law enforcement after Straub refused his audible commands to halt. *See* Ind. Code § 35–44–3–33(a)(3). However, we believe that Officer Grable's primary objective in pursuing Straub was to detain him in order to question him regarding his movements that night and if warranted, administer an alcohol test to determine impairment or intoxication. Officer Grable obtained the probable cause to arrest Straub for fleeing law enforcement during his attempt to conduct an investigatory stop of Straub that was thwarted by his fleeing from the police officer. Thus, the probable cause for the arrest was a by-product of the attempted investigatory

stop and not the primary reason for Officer Grable's decision to enter Straub's apartment and detain him. Absent the suspicion of the alcohol violation, Officer Grable would not have been justified in entering Straub's home.

 We believe that Officer Grable was justified in entering Straub's home in order to preserve evidence of Straub's blood alcohol content. An exception to the warrant requirement permits the State to enter a home when government agents believe that evidence may be destroyed or removed before a search warrant is obtained. *Sayre v. State,* 471 N.E.2d 708, 714 (Ind.Ct.App.1984), *cert. denied,* 475 U.S. 1027, 106 S.Ct. 1226, 89 L.Ed.2d 336 (1986). The police must have an objective and reasonable fear that the evidence is about to be destroyed. *Harless v. State,* 577 N.E.2d 245, 247 (Ind.Ct.App.1991). Moreover, exigent circumstances cannot be created by police officers to justify warrantless searches. *State v. Williams,* 615 N.E.2d 487, 488 (Ind.Ct.App.1993). We have previously held "the threat of the 'metabolic destruction of evidence' of a suspect's intoxication, i.e., the bodily absorption of alcohol in the bloodstream" to be exigent circumstances. *Zimmerman v. State,* 469 N.E.2d 11, 17 (Ind.Ct.App.1984) (citing *Shultz v. State,* 417 N.E.2d 1127, 1138 (Ind.Ct.App.1981)).

As we have previously mentioned, Officer Grable had reasonable suspicion that Straub was the driver of the truck with an attached snowplow blade and that he had operated the vehicle while impaired or intoxicated. However, Officer Grable was unable to effect a *Terry* stop due to Straub's active fleeing from the police officer. It wasn't until Officer Grable had detained Straub and questioned him that he obtained probable cause to believe that

Straub was operating a vehicle while intoxicated. *See* R. 136–38.

During the entire incident, the progression of time naturally began to dissipate the alcohol in Straub's body. If Officer Grable was forced to obtain a warrant to enter the residence, it is entirely possible that Straub no longer would have been impaired or intoxicated. Although there was not a fear that Straub would actively destroy the evidence, there was an objective and reasonable fear that time would destroy evidence of Straub's impairment or intoxication.

The facts of this case are markedly different than those of *Timmons v. State*, 723 N.E.2d 916 (Ind.Ct.App.2000), *on reh'g* 734 N.E.2d 1084 (Ind.Ct.App.2000). In *Timmons*, the police received a tip that the defendant had been involved in two hit-and-run accidents. 723 N.E.2d at 918. The police later determined that the car parked in front of the defendant's residence matched the description of the hit-and-run vehicle. *Id.* The defendant's sister confirmed that he was inside the residence but refused to come out. *Id.* We held that the police were required to obtain a valid warrant before entering the residence to arrest Timmons for the two misdemeanor offenses. *Id.* at 920. On rehearing, we stated that the police did not discover that the defendant was intoxicated until they entered the residence and subjected the defendant to an illegal arrest. 734 N.E.2d at 1087. "Here, the intoxication evidence was obtained solely as a result of the officers' unlawful entry into [the defendant's] home." *Id.*

In the present case, Officer Grable was in continuous pursuit of Straub and had reasonable suspicion that he operated the truck with the snowplow while impaired or intoxicated. An intervening event did not occur to create a time lag from Officer Grable's knowledge and observation of the impaired driving to the pursuit of Straub as the likely traffic offender. The events occurred in rapid succession and in close proximity in time to one another. Moreover, Straub committed at least one misdemeanor offense in his presence, fleeing law enforcement, and we believe that it was reasonable for Officer Grable to assume that Straub ran in order to cloak the additional offense of operating a vehicle while intoxicated. We have no doubt that Straub realized that if he was detained by Officer Grable, he would be administered a blood alcohol test. We do not believe that a defendant should be able to benefit from nature destroying the only evidence of the crime because he was more "fleet of foot" than a pursuing police officer close on the defendant's heels. Therefore, we hold that the trial court erred in granting Straub's motion to suppress because Officer Grable was justified in pursuing Straub into his home in order to preserve evidence of Straub's blood alcohol content.

## Conclusion

Based on the foregoing, we hold that the trial court erred in granting Straub's motion to suppress because Officer Grable was justified in pursuing Straub into his home in order to preserve Straub's blood alcohol content.

Reversed.

VAIDIK, J., concurs.

BROOK, J., dissents with opinion.

BROOK, J., dissenting.

I agree with the standard cited by the majority for reviewing motions to suppress. *See Carter v. State*, 686 N.E.2d 1254, 1258 (Ind.1997); *Haviland v. State*, 677 N.E.2d 509, 513 (Ind.1997). I part ways with the analysis and conclusion.

At the outset, I would note that during the ride to the police station, Straub asked Officer Grable what charges would be filed. Officer Grable opined that Straub would be charged with resisting law enforcement and operating a vehicle while intoxicated. Straub explained that he already had an OWI conviction and could not get another. Once at the police station, Officer Grable read the *Miranda* rights to Straub and asked him why he fled. Straub replied that he was out getting cigarettes when the driver of the lead truck cut him off, which caused Straub to drive erratically. Straub also claimed that he was dropping his snow blade on the road to help him stop on the icy road. He then admitted that he did not stop when ordered to because he got scared. Straub took the chemical breath test after making these statements. It is these statements that the State argues should not have been suppressed.

"[I]f a confession is the product of an unlawful detention or an illegal arrest it is inadmissible." *Dillon v. State*, 454 N.E.2d 845, 851 (Ind.1983); *see also Campbell v. State*, 500 N.E.2d 174, 179 (Ind.1986) ("Statements, however voluntary, are inadmissible under the Fourth Amendment if they are the product of an illegal detention and not the result of an independent act of free will."). A warrantless in-home arrest is not valid without probable cause to arrest the suspect *and* exigent circumstances making it impractical to first procure an arrest warrant. *Harrison v. State*, 424 N.E.2d 1065, 1068 (1981) (emphasis added). We have elaborated:

> Courts should take a very hard line against the search of a person's home without a warrant or consent; and therefore, demand a genuine showing of an emergency before they will excuse the police's failure to obtain a warrant. Such exigent circumstances justify dispensing with the search warrant but do not eliminate the need for probable cause. The State bears the burden of proving that a warrantless search falls into one of the exceptions to the requirement of a judicially issued search warrant.

> The exceptions to the fourth amendment's requirement of a search warrant before lawful entry of a premises include risk of bodily harm or death, aiding a person in need of assistance, protecting private property, or actual or imminent destruction or removal of evidence before a search warrant may be obtained. Exigent circumstances justifying a warrantless search exist where the police have an objective and reasonable fear that the evidence is about to be destroyed; the arresting officers must have a reasonable belief that there are people within the premises who are destroying or about to destroy the evidence. In such a case, the evidence's nature must be evanescent and the officers must fear its imminent destruction.

*Harless v. State*, 577 N.E.2d 245, 248 (Ind. Ct.App.1991) (citations omitted).

We have found "the threat of the 'metabolic destruction of the evidence' of a suspect's intoxication, i.e., the bodily absorption of the alcohol in his bloodstream" to be exigent circumstances. *Zimmerman v. State*, 469 N.E.2d 11, 17 (Ind.Ct.App.1984) (citing *Shultz v. State*, 417 N.E.2d 1127, 1138 (Ind.Ct.App.1981)). In view of *Zimmerman*, I am willing to agree with the majority's assertion that exigent circumstances existed. *But see Justice v. State*, 552 N.E.2d 844, 847 (Ind.Ct.App.1990) (stating, in a different context: "Absent an auto accident, the dissipation of alcohol in the blood does not alone create exigent circumstances."). However, the exigent circumstance of dissipation of alcohol does

not seem to be of the same magnitude as the other types of exigent circumstances.

As I have already noted, exigent circumstances must be coupled with probable cause to arrest. "Probable cause is said to exist when, at the time of an arrest, the arresting officer has knowledge of facts and circumstances which would warrant a reasonably cautious and prudent man to believe the suspect committed the criminal act in question." *State v. Blake*, 468 N.E.2d 548, 550 (Ind.Ct.App.1984). Thus, I examine the possible bases for probable cause.

Until he spoke with Straub, Officer Grable knew only that: (1) a citizen had reported that a truck was being driven erratically; and (2) a man was running away from the area where Officer Grable had lost sight of the truck. There was no evidence that the citizen gave a description of the driver of the truck. Officer Grable conceded that he had "no idea" how many people were in the truck (Record at 114) and that he did not "have any idea who [the] white male [was]" that he saw running (Record at 125). Indeed, during Officer Grable's deposition, the following colloquy transpired:

A. ... I see the suspect about here, running down this hill.

Q. ... How far are you, when you say suspect, you just see a person?

A. Correct. I see an individual.

Record at 126.

Q. So you know it's a white male, but you really can't link this white male at this point in time to the truck, you believe it might be?

A. Correct.

Q. And if this person is not that person, I mean, this person has done nothing wrong?

A. That's correct.

Record at 130. Hence, Officer Grable did not know if Straub was the driver of the truck, let alone if the driver was intoxicated. *Cf. Blake*, 468 N.E.2d at 550 (officer, who had continuously pursued vehicle after seeing it speeding, actually saw defendant exit driver's seat of vehicle and enter home). Given these facts, I would agree that Officer Grable had reasonable suspicion to stop Straub and question him further. However, I do not believe that, prior to Officer Grable's warrantless entry into Straub's apartment, he had probable cause to arrest Straub for operating while intoxicated.

In order to have probable cause to arrest Straub for resisting law enforcement, Officer Grable must have had knowledge of facts and circumstances that would warrant a reasonably cautious and prudent person to believe that Straub had knowingly or intentionally fled from Officer Grable after he had, by visible or audible means, identified himself and ordered him to stop. *See* IND.CODE § 35–44–3–3(a)(3). Officer Grable testified that after losing sight of the truck, he saw Straub run and fall, at which point he yelled, "stop, police." Officer Grable then stated, "I remember the individual looking at me. I think I surprised him. He continues and ignores my command. He gets up and continues running again in the same direction...." Record at 127. As he pursued Straub, Officer Grable continued yelling for him to stop, but Straub did not comply. When Straub reached his apartment and grabbed the doorknob, he made eye contact with Officer Grable. Officer Grable yelled again, but Straub entered the apartment and shut the door. Under these circumstances, Officer Grable had probable cause to arrest Straub for resisting law enforcement as a misdemeanor. *Cf. Jones v. State*, 164 Ind.App. 252, 254, 328 N.E.2d 221, 223 (1975) (concluding there was sufficient evidence an even higher standard

than probable cause to support resisting law enforcement under following facts: policeman heard report that cabdriver was robbed, saw a man running near the area where robbery occurred, and verbally identified himself as a police officer; defendant turned and looked at policeman and his marked patrol car before resuming his flight).

Accordingly, I conclude that exigent circumstances existed in the form of dissipation of alcohol and that there was probable cause to arrest for misdemeanor resisting law enforcement. Despite this conclusion, I am troubled by the lack of nexus between the particular exigent circumstances and the offense for which Officer Grable had probable cause. *See Welsh v. Wisconsin,* 466 U.S. 740, 753, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984) (invalidating in-home warrantless arrest because there were no exigent circumstances great enough to allow the police to enter the defendant's home to arrest him on a minor infraction). Perhaps sharing my doubts on this issue, the State did not argue that potential alcohol dissipation constituted exigent circumstances here. The State argued that Officer Grable had a reasonable suspicion that Straub committed operating while intoxicated; that Officer Grable had probable cause to arrest Straub for resisting law enforcement after he fled despite repeated orders to stop; and that Officer Grable's continuous pursuit constituted the exigent circumstances to support the warrantless in-house arrest of Straub. Yet, none of the cases upon which the State relies are precisely on point with the present one.

In *Blake,* the police officer "clocked" the defendant's car speeding, activated his lights and siren, pursued the car, and watched as the defendant exited the driver's seat and entered his home despite the officer's order to stop. 468 N.E.2d at 549. The officer then entered the home and arrested the defendant for resisting law enforcement and operating while intoxicated. The defendant also received a speeding citation. *Id.* The arresting officers in *Miller* observed the defendant commit the offenses of reckless driving and criminal recklessness and then engaged in an immediate and continuous high-speed pursuit from the scene of the crimes to the defendant's home where, still in pursuit, the officers entered his house and arrested him. *Miller v. State,* 634 N.E.2d 57, 62 (Ind.Ct.App.1994); *see also Lepard v. State,* 542 N.E.2d 1347, 1348–49 (Ind.Ct. App.1989) (after seeing defendant commit two traffic infractions, officer continuously pursued him onto his driveway so she could question him; upon questioning him, she had probable cause to believe he had been operating while intoxicated; once he went into his house, she had probable cause to believe he was resisting and could therefore make warrantless in-home arrest).

Here, in contrast, Officer Grable did not know if Straub was the person who was operating the truck. Hence, Officer Grable's *continuous* pursuit of Straub did not begin when he was following the truck, but rather when he saw Straub running, identified himself as a police officer, and told him to stop. To permit a warrantless in-home arrest under such circumstances, where there was only probable cause to arrest for misdemeanor resisting and exigent circumstances in the form of continuous pursuit from the time of the alleged resisting, would seem to me to be an expansion of the law regarding warrantless in-home arrests. It would appear to pave the way for warrantless in-home arrests in numerous situations not previously contemplated. I am unwilling to endorse such an expansion. I would conclude that this warrantless in-home arrest was illegal and that therefore Straub's statements, which

resulted from the arrest, were properly suppressed.

For these reasons I dissent.