## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 19 2016, 8:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

William T. Myers
Grant County Public Defender
Marion, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jack Hiatt,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

October 19, 2016

Court of Appeals Case No.
27A04-1603-CR-477

Appeal from the Grant Superior Court

The Honorable Jeffrey D. Todd, Judge

Trial Court Cause No.
27D01-1509-F4-36

**Bailey, Judge.**

# Case Summary

Following a jury trial, Jack Hiatt ("Hiatt") was convicted of (1) Dealing in Methamphetamine, as a Level 4 felony[1]; (2) Maintaining a Common Nuisance, as a Level 6 felony[2]; and Possession of Paraphernalia, as a Class C misdemeanor[3]. Wilkins now appeals, raising the sole restated issue of whether the trial court improperly admitted evidence procured as a result of a warrantless entry into Hiatt's residence. We affirm.

# Facts and Procedural History

On September 16, 2015, an arrestee provided a tip to Sergeant John Kauffman ("Sergeant Kauffman") and Detective Jeff Wells ("Detective Wells") of the Marion Police Department narcotics task force. The tipster stated that Hiatt was manufacturing methamphetamine on a regular basis, and that Hiatt had recently moved to a yellow house near the intersection of 8th and Branson. Sergeant Kauffman and Detective Wells were familiar with Hiatt.

Following the tip, Sergeant Kauffman, Detective Wells, and Detective Leland Smith ("Detective Smith") drove together toward the intersection. As they neared, Sergeant Kauffman saw a yellow building and thought he saw Hiatt in

---

[1] Ind. Code § 35-48-4-1.1(a)(1).

[2] I.C. § 35-48-4-13(b)(1).

[3] I.C. § 35-48-4-8.3(b)(1).

an upstairs apartment window. Both Sergeant Kauffman and Detective Wells exited the vehicle, crossed the street for a better view, and confirmed it was Hiatt. From the street, Sergeant Kauffman and Detective Wells observed Hiatt. There was a fan running in the window. Detective Wells saw Hiatt in the motion of crushing something, and Sergeant Kauffman saw Hiatt holding a red bottle and a funnel, pouring liquid into the funnel. Sergeant Kauffman thought the red bottle resembled that of fuel needed to produce methamphetamine. He believed Hiatt was in the process of making the drug.

[4] Sergeant Kauffman called Detective Joshua Zigler ("Detective Zigler"), who arrived minutes later. Detective Zigler was in plain clothes, in an unmarked vehicle. Instead of parking down the street, Detective Zigler inadvertently pulled up close to the residence. As Detective Zigler exited and locked his vehicle, its horn went off. At this point, Hiatt looked down from the window. Improvising, Detective Zigler shouted to Hiatt that he had a flat tire and asked Hiatt if he had a jack. Hiatt then exited the apartment. When Hiatt came downstairs, Sergeant Kauffman took him into custody. Hiatt yelled upstairs, directing someone inside the apartment to shut the door.

[5] Once Hiatt was in custody, Detective Zigler and Detective Smith went upstairs toward the apartment Hiatt had exited. When they reached the door, Detective Zigler pushed it open and yelled "police." Detective Zigler then entered the doorway, pushed the door all the way open, and saw two women. He told them to leave the apartment. Detective Zigler next conducted a protective sweep to make sure no one else was inside. When conducting the protective

sweep, Detective Zigler did not find anyone else. However, he did see certain items that appeared to be associated with manufacturing methamphetamine. Detective Zigler then evacuated the other apartments in the building.

[6] Once the scene was secure, Detective Zigler and Sergeant Kauffman left to obtain a search warrant, a process which typically takes thirty minutes or more. To obtain the search warrant, Detective Zigler and Sergeant Kauffman participated in a telephonic probable cause hearing. During the hearing, they told the judge about law enforcement observations both before entering the residence and during Detective Zigler's protective sweep. The judge issued the search warrant and, pursuant to the warrant, law enforcement began collecting evidence from inside the residence as well as from a trash bag on the curb.

[7] On September 22, 2016, the State charged Hiatt with (1) Dealing in Methamphetamine, as a Level 4 felony[4]; (2) Maintaining a Common Nuisance, as a Level 6 felony[5]; (3) Dumping Controlled Substance Waste, as a Level 6 felony[6]; and (4) Possession of Paraphernalia, as a Class C misdemeanor[7].

[8] Hiatt filed a Motion to Suppress Evidence on January 5, 2016 and the trial court held a hearing on the motion. The trial court denied Hiatt's motion on

---

[4] I.C. § 35-48-4-1.1(a)(1).

[5] I.C. § 35-48-4-13(b)(1).

[6] I.C. § 35-48-4-4.1(a)(2).

[7] I.C. § 35-48-4-8.3(b)(1).

January 12, 2016 and on that day a jury trial commenced. Following the trial, Hiatt was convicted of (1) Dealing in Methamphetamine, (2) Maintaining a Common Nuisance, and (3) Possession of Paraphernalia.

[9]     This appeal ensued.

# Discussion and Decision

[10]     Hiatt argues that Detective Zigler's warrantless entry into his apartment violated his rights under the Fourth Amendment to the U.S. Constitution and Article 1, Section 11 of the Indiana Constitution. He contends that any evidence procured during the protective sweep should not have been admitted. Moreover, Hiatt argues that because a warrant was subsequently obtained based on items Detective Zigler observed in plain view while inside the apartment, all evidence seized pursuant to the warrant must be suppressed as "fruit of the poisonous tree."

[11]     Hiatt asks us to review the trial court's denial of his Motion to Suppress Evidence. However, where a pretrial motion to suppress is denied, the case proceeds to trial, and the defendant renews his objection to the admission of evidence, the issue is best framed as challenging the admission of evidence at trial. *Clark v. State*, 994 N.E.2d 252, 259 (Ind. 2013). The trial court has broad discretion to rule on the admissibility of evidence at trial. *Guilmette v. State*, 14 N.E.3d 38, 40 (Ind. 2014). We review the court's ruling for abuse of that discretion and reverse only when admission is clearly against the logic and

effect of the facts and circumstances before the court and the error affects a party's substantial rights. *Id.* (citation and quotation marks omitted). An appellant's challenge to the constitutionality of a search or seizure raises a question of law, which we review *de novo*. *Id*. at 40-41.

# Fourth Amendment

[12] The Fourth Amendment provides, in relevant part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." The Fourth Amendment's protections against unreasonable searches and seizures extend to the States through the Fourteenth Amendment. *Berry v. State*, 704 N.E.2d 462, 464-65 (Ind. 1998) (citing *Mapp v. Ohio*, 367 U.S. 643, 650 (1961)).

[13] "It is axiomatic that the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" *State v. Straub*, 749 N.E.2d 593, 597 (Ind. Ct. App. 2001) (quoting *U.S. v. U.S. Dist. Court for E. Dist. of Mich., S. Div.*, 407 U.S. 297, 313 (1972)). A principal protection against unnecessary intrusions into private dwellings is the Fourth Amendment's warrant requirement. *Straub*, 749 N.E.2d at 597. Searches performed by government officials without obtaining warrants are *per se* unreasonable under the Fourth Amendment, subject to a "'few specifically established and well-delineated exceptions.'" *Holder v. State*, 847 N.E.2d 930, 935 (Ind. 2006) (quoting *Katz v. U.S.*, 389 U.S. 347, 357 (1967)). The State bears the burden of proving that an exception to the warrant requirement applied at the time of a

warrantless search.  *Id*.  The remedy for an illegal warrantless search is the suppression of the evidence obtained from the search.  *Cudworth v. State*, 818 N.E.2d 133, 137 (Ind. Ct. App. 2004), *trans. denied*.

[14] One exception to the warrant requirement is where exigent circumstances exist. *Holder*, 847 N.E.2d at 936. As our supreme court has explained:

> The warrant requirement becomes inapplicable where the "'exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona*, 437 U.S. 385, 393-94, 98 S.Ct. 2408, 2414, 57 L.Ed.2d 290, 301 (1978).  Among the exigencies that may properly excuse the warrant requirement are threats to the lives and safety of officers and others and the imminent destruction of evidence.  *See Minnesota v. Olson*, 495 U.S. 91, 100, 110 S.Ct. 1684, 1690, 109 L.Ed.2d 85, 95 (1990).  Law enforcement may be excused from the warrant requirement because of exigent circumstances based on concern for safety as long as the State can prove that a delay to wait for a warrant would gravely endanger the lives of police officers and others.  *Warden v. Hayden*, 387 U.S. 294, 298-99, 87 S.Ct. 1642, 1646, 18 L.Ed.2d 782, 787 (1967); *see also Geimer v. State*, 591 N.E.2d 1016, 1019 (Ind. 1992).

*Id*. at 936-37.  A police officer's subjective belief that exigent circumstances exist is insufficient to justify a warrantless entry into a home or apartment; rather, the test is objective and the State must establish that the circumstances as they appear at the moment of entry would lead a reasonable, experienced law enforcement officer to believe that someone inside is in need of immediate aid. *Cudworth*, 818 N.E.2d at 137 (citations omitted).  Thus, "[t]he need to protect or

preserve life or avoid serious injury is justification for what would be otherwise illegal . . . ." *Mincey*, 437 U.S. at 392 (citation and quotation marks omitted).

[15] The State contends that based on observations of Hiatt in the window, the police believed Hiatt to be in the process of producing methamphetamine. Therefore, because "[i]t is well known, and the record makes it clear, that the explosion and fire rate is very high with methamphetamine labs and the inhalation of fumes can be deadly[,]" (Appellee's Br. at 13), Detective Zigler was justified in making a warrantless entry to evacuate anyone inside the apartment. The State further notes that, based on Hiatt yelling upstairs to someone to shut the apartment door, it was clear to the police that there was someone in the apartment in danger due to the methamphetamine lab.

[16] Hiatt argues, however, that based on the circumstances as they appeared at the moment of entry, the State failed to show that it was objectively reasonable to believe anyone was in need of immediate aid. He contends that although law enforcement "observed Mr. Hiatt pouring contents into a funnel . . . there was no testimony given in regards to hearing screams . . . smelling ether, observing smoke or fire." (Appellant's Br. at 11.) Hiatt particularly emphasizes the lack of an odor detected at his residence, arguing that due to the lack of an odor, this case is distinguishable from *Holder*.

[17] In *Holder*, our supreme court upheld a warrantless search when police officers detected the strong odor of ether—a flammable and explosive gas associated with the manufacture of methamphetamine—emanating from a residence and

knew that a young child remained inside the house. The court concluded that "[b]ecause the officers' reasons for the warrantless entry included their concern for substantial risk of immediate danger to an occupant from the highly flammable and explosive atmosphere in the home, their warrantless entry was justified by exigent circumstances." *Holder*, 847 N.E.2d at 939. The court then observed that "[s]everal courts have concluded that a belief that an occupied residence contains a methamphetamine laboratory, which belief is found on probable cause based largely on observation of odors emanating from the home, presents exigent circumstances permitting a warrantless search for the occupants' safety." *Id*. (citing a string of federal cases).

[18] We do not read *Holder* so narrowly as to preclude the existence of exigent circumstances where the police did not detect the odor of a methamphetamine lab, particularly where, as here, officers observed Hiatt in the process of manufacturing methamphetamine through a window.

[19] Hiatt further argues that if exigent circumstances existed, then law enforcement should have reacted differently by, for example, immediately entering the apartment instead of calling Detective Zigler to the scene. Hiatt, thus, seems to call into question whether the officers truly believed there were exigent circumstances. However, "[a]n action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, as long as the circumstances, viewed *objectively*, justify [the] action. The officer's subjective motivation is irrelevant." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 404 (2006) (citations and quotation marks omitted) (emphasis in original).

[20]     Here, officers from the narcotics task force investigated a tip that Hiatt was producing methamphetamine. They saw Hiatt crushing something and pouring what looked like liquid fuel, an ingredient in methamphetamine, into a funnel with the window fan on. They believed Hiatt was in the process of manufacturing methamphetamine. After Hiatt exited the apartment and encountered law enforcement, Hiatt made it clear there was someone still inside the apartment when he yelled upstairs. The circumstances here, viewed objectively, support the reasonable belief that the dangers of manufacturing methamphetamine presented a threat to the safety of anyone in the apartment. As this Court stated in *VanWinkle v. State*, "[t]he combined knowledge of the fact that the manufacture of methamphetamine can be very dangerous and the fact that there were still other people in the residence would cause any reasonable police officer to see the immediate need to remove any remaining persons from the residence." 764 N.E.2d 258, 266 (Ind. Ct. App. 2002), *trans. denied*.

[21]     Hiatt also cursorily argues that the police officers improperly created exigent circumstances. Although it is true that police officers cannot create exigent circumstances to justify warrantless searches, *Hawkins v. State*, 626 N.E.2d 436, 439 (Ind. 1993), Hiatt does not set forth which circumstances the police officers purportedly created. Nonetheless, we find that the exigent circumstances here—the dangers that inhere in manufacturing methamphetamine—existed at the time the officers first observed Hiatt.

[22]     In sum, we conclude that the circumstances of this case justified the warrantless entry of Hiatt's residence under the exigent circumstances exception to the Fourth Amendment's warrant requirement. Therefore, the trial court did not abuse its discretion with respect to the Fourth Amendment in admitting evidence obtained as a result of the warrantless search or subsequent warrant.

# Article 1, Section 11

[23]     Hiatt also argues that the warrantless search of his apartment violated Article 1, Section 11 of the Indiana Constitution.

[24]     The language of Section 11 mirrors the Fourth Amendment's protections against unreasonable searches and seizures. U.S. Const. amend. IV; Ind. Const. art 1, § 11; *Trowbridge v. State*, 717 N.E.2d 138, 143 (Ind. 1999). However, the test for determining a rights violation differs between the two provisions. *Trowbridge*, 717 N.E.2d at 143. Analysis under Article 1, Section 11 turns on the specific facts of each case and whether police conduct is reasonable in light of the totality of the circumstances. *VanWinkle*, 764 N.E.2d at 266. "[T]he totality of the circumstances requires consideration of both the degree of intrusion into the subject's ordinary activities and the basis upon which the officer selected the subject of the search or seizure. *Litchfield v. State*, 824 N.E.2d 356, 360 (Ind. 2005). "Our determination of the reasonableness of a search or seizure under Section 11 often 'turn[s] on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's

ordinary activities, and 3) the extent of law enforcement needs.'" *Holder*, 847 N.E.2d at 940 (quoting *Litchfield*, 824 N.E.2d at 361).

[25]   Here, based on their observations, law enforcement officers had a high degree of suspicion that Hiatt was actively making methamphetamine. Although the degree of intrusion was high in entering Hiatt's apartment, law enforcement's need to ensure safety in light of the known dangers associated with clandestine methamphetamine labs outweighs the intrusion. We therefore conclude that, based on the totality of the circumstances, Detective Zigler's entry into the apartment was not unreasonable and thus did not violate Article 1, Section 11 of the Indiana Constitution. *See VanWinkle*, 764 N.E.2d at 267 (finding that the warrantless entry into a residence was reasonable under Article 1, Section 11 "because, had the officers taken the time to get a search warrant at that point, the people remaining in the residence could have been injured by the volatile [methamphetamine] manufacturing process . . . ."). Thus, the trial court did not abuse its discretion in admitting evidence procured as a result of the warrantless entry or the warrant founded thereupon.

# Conclusion

[26]   Because Detective Zigler's warrantless entry into Hiatt's apartment did not violate Hiatt's federal or state constitutional rights, the trial court did not abuse its discretion in admitting evidence obtained as a result of the warrantless search or the subsequent search warrant.

Affirmed.

Riley, J., and Barnes, J., concur.