William McDERMOTT, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0609–CR–755.

Court of Appeals of Indiana.

Nov. 27, 2007.

Katherine A. Cornelius, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Matthew D. Fisher, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

William McDermott ("McDermott") brings this interlocutory appeal of the trial court's order denying his motion to sup-press his arrest and charges stemming therefrom.

We affirm.

### ISSUE

Whether the trial court's denial of McDermott's motion to suppress constituted an abuse of discretion.

### FACTS

On June 3, 2006, at approximately 7:45 a.m., a motorist approached Marion County Sheriff's Deputy Jeffrey Wood ("Deputy Wood") near the intersection of Sixth and Main Streets in Beech Grove. The motorist advised that just to the south, a man was sitting in the roadway, interfering with traffic and shouting. According to the motorist, the man was also threatening passersby and trying to start a fight. (Tr. 6). Deputy Wood listened closely and could hear "somebody yelling south of [him]." (Tr. 7). Deputy Wood, in full uniform and in a marked squad car, drove toward the origin of the noise and saw the man, later identified as McDermott.

McDermott was "standing in the middle of the street yelling and screaming" in an "incoherent" manner. (Tr. 7). When Deputy Wood exited his patrol car and asked McDermott to step over to speak with him, McDermott responded, "F* * * you, you don't have jurisdiction here." (Tr. 8). McDermott then ran to the west between two houses and stood in the grass. Deputy Wood followed and asked McDermott speak with him. McDermott refused, "turned and kind of ran, walked quickly" to the south. (Tr. 9). Deputy Wood followed and "kept repeating ... come here bud I need to talk to you. What's going on? Why are you out here in the middle of the street." (Tr. 9).

McDermott walked past several houses, before coming to 64 South Sixth Street, where he opened the screen door and en-

tered, leaving the front door open. Unaware of McDermott's identity and uncertain as to whose house McDermott had entered, Deputy Wood approached the house. Standing on the porch, Deputy Wood opened the screen door and looked through the open front door. Inside, he could see McDermott, seated just beyond the threshold. Deputy Wood asked McDermott to step outside to talk; McDermott refused.

Unsure as to whether McDermott was a resident of the home, Deputy Wood asked him to present a form of identification to verify his right to be on the premises. McDermott adamantly refused. Deputy Wood called for backup assistance and again asked McDermott, "What's going on? Do you have any identification on you?" (Tr. 10). Deputy Wood observed that "[a]t that point [McDermott] started getting very agitated." (Tr. 10). Soon thereafter, Deputy Eric Snow arrived at the scene. By now, McDermott's shouting had awakened neighborhood residents, who were watching the events unfold.

McDermott waved his arms about, clenched his fists, and slid forward in his seat as if to stand. He still refused to identify himself. Deputies Wood and Snow entered the residence, crossed the threshold and approached McDermott, who continued to display signs of aggression. Deputy Wood sensed that a fight was imminent and used his taser[1] to subdue McDermott. McDermott fell to the floor, but refused to allow the deputies to handcuff him. After a physical struggle, the deputies finally managed to handcuff McDermott, and were able to identify him as a resident of the home.

On June 3, 2006, the State charged McDermott with resisting law enforcement as a class A misdemeanor; disorderly conduct as a class B misdemeanor; and public intoxication as a class B misdemeanor. McDermott's bench trial was scheduled to commence on July 19, 2006. At the opening of trial, McDermott orally moved to suppress his arrest and all charges therefrom. The parties argued the motion, and then Deputy Wood testified to the matters noted above. Following Deputy Wood's testimony and after closing arguments, the trial court took McDermott's motion under advisement. On August 7, 2006, the trial court denied McDermott's motion to suppress, stating,

> ... I'm basing [my decision] on the obstruction of traffic which is an offense that ... the defendant had committed in [Deputy Wood's] presents [sic] ... according to [State v. Straub, 749 N.E.2d 593, 600 (Ind.Ct.App.2001)] finding probable cause for that[,] even though you arrested him [ultimately for a] different offense that's enough to go ahead and follow the defendant into his home. And [McDermott] did leave the scene. [T]here is testimony that he did not run but he left the scene and went into a house, of course the officer didn't know who's [sic] house it was and of course [it] ultimately ended up being the defendant's house. [McDermott] was avoiding the arrest ... by leaving the scene and that the officer had testified that [McDermott] was incoherent. He was obstructing traffic. He was yelling profanities and the officer saw this occur and [McDermott] ran from the street to

---

1. " 'TASER devices utilize compressed nitrogen to project two small probes up to 15, 21 or 25 feet ... at a speed of over 160 feet per second. These probes are connected to the TASER device by insulated wire. An electrical signal is transmitted through the wires to where the probes make contact with the body or clothing, resulting in an immediate loss of the person's neuromuscular control and the ability to perform coordinated action for the duration of the impulse.' " Stokes v. State, 828 N.E.2d 937, 944 (Ind.Ct.App.2005).

the grass then from that point when he left that area to go to his home he didn't walk. He did not run according to the officer but was walking quickly. So I'm finding there are exigent circumstances. A risk of bodily harm to [McDermott], possibly other people when he was standing in the street with traffic coming. He could have been hit by a car or somebody in a car could have been injured by that accident as well. And of course I fully understand the risk from traffic dissipated once the defendant left the street, but [from] all of these things combined ... there was enough for the officer to pursue [McDermott] into his home. [McDermott] was a person in need of assistance[,] possibly to protect private property as well because again the officer didn't know who's [sic] home that was. * * * I don't know how [officers asked to protect the public] could possibly know other facts that were needed without dealing with the situation right then and there which I think the officer was bound to do at that time. * * * And again the officer didn't know why [McDermott] was acting bizarrely as he said and I don't know how he could possibly know that and [in] my opinion I don't think he should have had to wait for a warrant in this case and that's it.

(Tr. 30–32). The defense orally moved for an interlocutory appeal. The trial court granted the motion, and this appeal ensued pursuant to Indiana Code section 35–38–4–2.

### DECISION

McDermott challenges the trial court's denial of his motion to suppress his arrest and charges stemming therefrom. Specifically, McDermott argues that Deputies Wood and Snow entered his home without a warrant and in the absence of exigent circumstances or other justification, and in so doing, violated the unreasonable search and seizure provisions in Article 1, Section 11 of the Indiana Constitution and the Fourth Amendment to the Constitution of the United States.

Upon reviewing a motion to suppress, we do not reweigh the evidence or judge the credibility of witnesses but instead consider all uncontroverted evidence together with the conflicting evidence that supports the trial court's decision. *Ware v. State,* 782 N.E.2d 478, 480 (Ind.Ct.App. 2003), *trans. denied.* However, unlike the typical sufficiency of the evidence case, we also consider the uncontested evidence favorable to the defendant. *Id.* A trial court has broad discretion in ruling on the admissibility of evidence, and we will disturb its ruling only where it is shown that the trial court abused that discretion. *Id.* An abuse of discretion occurs if the decision is against the logic and effect of the facts and circumstances before the court. *Anglemyer v. State,* 868 N.E.2d 482, 490 (Ind.2007).

The Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution protect citizens from unreasonable searches and seizures. "In spite of the similarity in structure of the federal and state constitutional provisions, interpretations and applications vary between them." *Holder v. State,* 847 N.E.2d 930, 935 (Ind.2006). McDermott has alleged both federal and state constitutional violations.

1. *Article 1, Section 11 of the Indiana Constitution*

First, McDermott asserts that the deputies' warrantless entry into his home violated Article 1, Section 11 of the Indiana Constitution. Our Supreme Court has previously held that "investigation under [Article 1,] Section 11 places the bur-

den on the State to demonstrate that each relevant intrusion was reasonable in light of the totality of the circumstances." *Id.* (quoting *Litchfield v. State,* 824 N.E.2d 356, 360 (Ind.2005)). Further, the Court stated,

> As we consider reasonableness based upon the particular facts of each case, the Court also gives Art. 1, § 11, a liberal construction to angle in favor of protection for individuals from unreasonable intrusions on privacy. At the same time, 'Indiana citizens have been concerned not only with personal privacy but also with safety, security, and protection from crime.' It is because of concerns among citizens about safety, security, and protection that some intrusions upon privacy are tolerated, so long as they are reasonably aimed toward those concerns. Thus, we have observed 'that the totality of the circumstances requires consideration of both the degree of intrusion into the subject's ordinary activities and the basis upon which the officer selected the subject of the search or seizure.'

*Holder,* 847 N.E.2d at 940 (quoting *Litchfield,* 824 N.E.2d at 360 (internal citations omitted)). Thus, to determine the reasonableness of police conduct under the totality of the circumstances, we consider "(1) the degree of concern, suspicion, or knowledge that the person has violated the law; (2) the degree of intrusiveness that the search or arrest method imposes on the person; and (3) the extent of law enforcement needs." *State v. Harmon,* 846 N.E.2d 1056, 1058 (Ind.Ct.App.2006).

The facts as known to Deputy Wood before he entered the house were as follows: A motorist reported that an unidentified man was sitting in the middle of the street, obstructing traffic, screaming incoherently, and trying to fight passersby in the early hours of a Saturday morning.

From a distance of almost one block away, Deputy Wood heard the sound of someone shouting. He drove to the scene of the noise and personally observed an unidentified man standing in the middle of the street, raving incoherently. When Deputy Wood exited his patrol car and asked to speak with the man, the man challenged Deputy Wood's authority, cursed at him, and ignored Deputy Wood's questions.

The man then walked away briskly past several houses and entered a house located at 64 South Sixth Street, leaving the main door open and sitting down inside. Deputy Wood followed the man to the house, still asking to speak with him. At that point, Deputy Wood did not know whether the unidentified man had entered his own home or that of an unsuspecting, and likely sleeping, resident.

From the porch of the house, Deputy Wood asked the man to exit and present a form of identification; the man refused. Wary under the circumstances, Deputy Wood requested backup assistance and continued to ask the man to identify himself. Deputy Wood's requests were met with additional displays of physical aggression as the man clenched his fists, waved his arms about, and became increasingly agitated and menacing. When backup officer Deputy Snow arrived, the deputies entered the residence, subdued the man, ascertained his identity, and took him outside.

First, we consider the degree of Deputy Wood's concern, suspicion, or knowledge that McDermott had violated the law. Here, Deputy Wood had a justifiably high degree of concern and suspicion that McDermott had engaged in illegal activity. McDermott's loud and incoherent shouting, audible from almost a block away, and his erratic behavior, obstructing traffic and trying to fight passersby in the middle of the street, certainly created a nuisance. It

was reasonable of Deputy Wood to assume that McDermott's behavior was consistent with that of an intoxicated or perhaps mentally impaired individual. Deputy Wood investigated further and repeatedly asked McDermott to identify himself, but McDermott refused. Not surprisingly, McDermott's vehement refusals served only to heighten Deputy Wood's concern and suspicion.

Next, we address the degree of intrusiveness of Deputy Wood's entry. Considering the behavior that McDermott exhibited before entering the house at 64 South Sixth Street, and the fact that Deputy Wood feared that McDermott had entered someone else's home, we find the degree of intrusiveness to be reasonable. As our supreme court noted in *Holder*,

> 'Indiana citizens have been concerned not only with personal privacy but also with safety, security, and protection from crime. It is because of concerns among citizens about safety, security, and protection that some intrusions upon privacy are tolerated, so long as they are reasonably aimed toward those concerns.'

*Holder*, 847 N.E.2d at 940 (quoting *Litchfield*, 824 N.E.2d at 360). Here, the deputies' entry was reasonably aimed toward safety, security, and protection from crime. The deputies initiated their entry while under the impression that an unidentified and uncooperative man, who refused to disclose his identity, had entered a residence not known to be his own. Moreover, they entered only after McDermott became visibly agitated and menacing. The deputies subdued McDermott, secured proof of his identity, and immediately removed him from the house. The record does not indicate that the deputies either reentered or collected any physical evidence whatsoever from the house. Under the totality of the circumstances, and given

the safety and security concerns at issue, we find the degree of intrusiveness of the deputies' entry to be reasonable.

Last, with regard to the extent of law enforcement needs, we note that "[a] brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." *Russell v. State*, 519 N.E.2d 549, 551 (Ind.1988). McDermott's behavior was suspicious, and Deputy Wood's concern was heightened when McDermott ran away and refused to stop or identify himself. Deputy Wood followed and saw McDermott enter a house without using a key. At this point, the situation escalated quickly, because Deputies Wood and Snow needed to ensure that the unidentified man displaying erratic and aggressive behavior had not entered the home of an unsuspecting and likely sleeping resident.

Viewed in their totality, the foregoing facts support the reasonableness of the deputies' entry. The trial court did not abuse its discretion when it denied McDermott's motion to suppress based upon the purported violation of Article 1, Section 11.

## 2. *Fourth Amendment*

Next, McDermott argues that the deputies violated the Fourth Amendment when they entered his home without a warrant. As stated above, searches or seizures inside a home without a warrant are presumptively unreasonable. *Holder*, 847 N.E.2d at 935. "However, 'on occasion the public interest demands greater flexibility than is offered by the constitutional mandate' of the warrant requirement." *Straub*, 749 N.E.2d at 597 (quoting *Rabadi v. State*, 541 N.E.2d 271, 274 (Ind.1989)). Accordingly, there are some carefully delineated exceptions to the warrant requirement. *Weis v. State*, 800

N.E.2d 209, 213 (Ind.Ct.App.2003). "A search without a warrant requires the State to prove an exception to the warrant requirement applicable at the time of the search." *Holder*, 847 N.E.2d at 936.

■ One exception allows police to dispense with the warrant requirement in the presence of exigent circumstances. "The warrant requirement becomes inapplicable where the 'exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment.'" *Id.* (quoting *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978)). Among the well-known exigent circumstances that have justified a warrantless search or seizure are entries (1) to prevent bodily harm or death; (2) to aid a person in need of assistance; (3) to protect private property; and (4) to prevent actual or imminent destruction or removal of incriminating evidence before a search warrant may be obtained. *Weis*, 800 N.E.2d at 213. Exigent circumstances have also been found where a suspect is fleeing or likely to take flight in order to avoid arrest; or the case involves hot pursuit or movable vehicles. *Id.* In addition, we have found exigent circumstances where police entered to aid or prevent further injury to victims of violent crime. *Straub*, 749 N.E.2d at 597–98.

■ "Hesitation in finding exigent circumstances, especially when warrantless arrests in the home are at issue, is particularly appropriate when the underlying offense for which there is probable cause to arrest is relatively minor." *Welsh v. Wisconsin*, 466 U.S. 740, 749–50, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984). The burden

is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries. *Id.* When the government's interest is only to arrest for a minor offense, said presumption is difficult to rebut. *Id.* "The validity of a warrantless arrest is determined by the facts and circumstances of each case." *Straub*, 749 N.E.2d at 598.

McDermott contends that the facts contained herein do not support a finding of exigent circumstances. We disagree. As noted above, a motorist advised Deputy Wood that a man was sitting and raving incoherently in the middle of the street, disrupting traffic, and attempting to fight passersby. Deputy Wood investigated the incident, observed the scene and attempted to identify and learn the nature of McDermott's erratic behavior, which we will not reiterate. We are struck by the incongruity of McDermott's conduct and his argument. Had he merely presented proof of his identity and verified that he was a lawful resident of the house, he would thereby have enhanced his argument against the presence of exigent circumstances.

Instead, as a result of McDermott's personal choices, the deputies were confronted with a situation involving an apparently disturbed, potentially intoxicated individual, who was obstructing vehicular traffic and who entered an unknown residence, refused to identify himself or verify his right to be on the premises, and who exhibited increasingly aggressive and menacing behavior. Under the unique facts and circumstances of this case, we find that the State has met its difficult burden of demonstrating probable cause [2] as well as

2. *See Cudworth v. State*, 818 N.E.2d 133, 140 (Ind.Ct.App.2004) (quoting *United States v. Holloway*, 290 F.3d 1331, 1337 (11th Cir.

2002), *cert. denied*, 537 U.S. 1161, 123 S.Ct. 966, 154 L.Ed.2d 897) ("[I]n validating a warrantless search based on the existence of an

exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries. The trial court's decision is not against the logic and effect of the facts and circumstances before it. Therefore, we do not find that the trial court abused its discretion when it denied McDermott's motion to suppress.

Affirmed.

KIRSCH, J., and MATHIAS, J., concur.

emergency, as with any other situation falling within the exigent circumstances exception,

the Government must demonstrate both exigency and probable cause.'').