## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 11 2019, 10:07 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Denise L. Turner
DTurner Legal LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Supervising Deputy Attorney
General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Alexis Flynn,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | December 11, 2019<br><br>Court of Appeals Case No.<br>19A-CR-1958<br><br>Interlocutory Appeal from the<br>Lawrence Superior Court<br><br>The Honorable William G. Sleva,<br>Judge<br><br>Trial Court Cause No.<br>47D02-1810-F5-1600 |

**Bradford, Judge.**

# Case Summary

Police responded to a domestic disturbance at Alexis Flynn's apartment on October 1, 2018. While there, officers conducted a protective sweep of the apartment for the purpose of confirming that it was safe and that any threat to Flynn was abated. Once inside, they observed contraband sitting in plain view. The officers immediately exited the apartment and obtained a search warrant. After obtaining a search warrant, the officers re-entered and conducted a search of the apartment, finding drug paraphernalia, methamphetamine, and marijuana. The State subsequently charged Flynn with Level 5 felony possession of methamphetamine, Level 6 felony neglect of a dependent, Class B misdemeanor possession of marijuana, and Class C misdemeanor possession of paraphernalia. Prior to trial, Flynn moved to suppress the evidence recovered during the search of her apartment. This interlocutory appeal follows the denial of Flynn's motion to suppress. We affirm.

# Facts and Procedural History

On October 1, 2018, members of the Indiana State Police and the Mitchell Police Department, including Mitchell Police Sergeant Michael Williams, responded to a domestic disturbance at Flynn's apartment. Upon arriving at the apartment, Sergeant Williams made contact with Flynn. Flynn indicated that she "and her male half had gotten into an argument." Ex. Vol. p. 7. Flynn "didn't know where the male was located. She thought he could possibly be in the residence, and then she said he might not be and she kept going back and

forth on her answers." Ex. Vol. p. 7. Sergeant Williams approached the apartment and noticed that "the door was cracked open slightly." Ex. Vol. p. 7. He could hear a television on inside. Sergeant Williams "knocked on the door and made an announcement" identifying himself and the other responding officers as police officers. Ex. Vol. p. 7. The officers "then went into the residence to perform a protective sweep to make sure that the individual was not in the residence." Ex. Vol. p. 7. During the sweep of the apartment, the officers observed, in plain view, "two methamphetamine smoking pipes" and what appeared to be a scale in the living room. Ex. Vol. p. 7.

[3] The officers immediately exited the apartment, and Sergeant Williams requested permission from Flynn to search the apartment. Flynn declined, so Sergeant Williams obtained a search warrant. During the subsequent search, the officers recovered the above-mentioned paraphernalia and found methamphetamine and marijuana as well.

[4] On October 2, 2018, the State charged Flynn with Level 5 felony possession of methamphetamine, Level 6 felony neglect of a dependent, Class B misdemeanor possession of marijuana, and Class C misdemeanor possession of paraphernalia. On January 3, 2019, Flynn filed a motion to suppress "all statements made by [Flynn] and any evidence collected as a result of" the search of the apartment. Appellant's App. Vol. II p. 28. The trial court conducted a hearing on Flynn's motion on July 2, 2019. On August 14, 2019, the trial court denied Flynn's motion to suppress. At Flynn's request, the trial court certified the matter for interlocutory appeal.

# Discussion and Decision

[5]     Flynn challenges the denial of her motion to suppress. "In reviewing a trial court's ruling on a motion to suppress, we determine whether substantial evidence of probative value exists to support the trial court's ruling." *Duran v. State*, 930 N.E.2d 10, 14 (Ind. 2010). "We do not reweigh the evidence and consider conflicting evidence most favorably to the trial court's ruling." *Id.*

[6]     The Fourth Amendment to the United States Constitution protects citizens from state intrusions into their homes. The Fourth Amendment reads:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

"The Fourth Amendment protection against unreasonable search and seizure has been extended to the states through the Fourteenth Amendment." *Weis v. State*, 800 N.E.2d 209, 213 (Ind. Ct. App. 2003).

[7]     The United States Supreme Court has said that the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed. The fundamental purpose of the Fourth Amendment is to protect the legitimate expectations of privacy that citizens possess in their persons, their homes and their belongings. Thus, searches and seizures inside a home without a warrant are presumptively unreasonable.

*Id.* (internal quotations omitted). "However, on occasion the public interest demands greater flexibility than is offered by the constitutional mandate of the warrant requirement." *State v. Straub*, 749 N.E.2d 593, 597 (Ind. Ct. App. 2001) (internal quotation omitted). "Accordingly, there are some carefully delineated exceptions to the warrant requirement." *McDermott v. State*, 877 N.E.2d 467, 473 (Ind. Ct. App. 2007). "One exception allows police to dispense with the warrant requirement in the presence of exigent circumstances." *Holder v. State*, 847 N.E.2d 930, 936 (Ind. 2006). "The warrant requirement becomes inapplicable where the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Id.* at 936–37.

[8] "Among the well-known exigent circumstances that have justified a warrantless search or seizure are entries (1) to prevent bodily harm or death; (2) to aid a person in need of assistance; (3) to protect private property; and (4) to prevent actual or imminent destruction or removal of incriminating evidence before a search warrant may be obtained." *McDermott*, 877 N.E.2d at 474.

> A 911 call generally details emergency or exigent circumstances requiring swift police action. In these cases, the officers are responding to rapidly changing or escalating events, and their initial response is often based on limited information. The officers cannot properly assess the complaint and the dangers to those threatened without some limited access to the involved parties. It is unrealistic to expect officers to wait for threats to escalate and for violence to become imminent before intervening.

*Barnes v. State*, 946 N.E.2d 572, 577 (Ind. 2011), *adhered to on reh'g*, 953 N.E.2d 473 (Ind. 2011).

[9] In *Lundquist v. State*, 834 N.E.2d 1061, 1068 (Ind. Ct. App. 2005), police responded to two 911 calls for a domestic disturbance. When officers arrived, they were informed by the alleged victims that Lundquist, the perpetrator, was thought to be hiding on the property. *Id.* at 1068–69. Given the nature of the emergency calls, officers completed a protective sweep of the property in an attempt to locate Lundquist. *Id.* at 1069. While conducting this sweep, officers found marijuana plants growing near the house. *Id.* Upon review, we noted that "[a]lthough [the officers] invaded the curtilage of Lundquist's residence, [their] intention in doing so was not to search for marijuana, but merely to find Lundquist. Moreover, the deputies reasonably believed Lundquist was hiding on the property." *Id.*

[10] Similarly, in this case, when the officers entered Flynn's apartment, their intention was not to search for drugs or contraband, but merely to ensure Flynn's safety by finding the co-participant in the domestic disturbance, who they reasonably believed could be hiding in the apartment. Again, the officers responded to Flynn's apartment because of a reported domestic disturbance. When they arrived, they were informed that the co-participant in the domestic disturbance "could possibly be in the residence" but "he might not be." Ex. Vol. p. 7. Reasonably believing that Flynn's co-participant in the dispute could be inside the apartment, the officers conducted a protective sweep of the apartment. They entered the apartment for the sole purpose of confirming that

the apartment was safe and that any threat to Flynn was abated. Once inside the apartment, the officers observed contraband in plain view. They then immediately stopped their protective sweep, exited the apartment, and obtained a search warrant. Only after obtaining the search warrant did officers re-enter and search the apartment.

[11] We believe that the officers acted reasonably in their efforts to protect Flynn from potential harm. The facts of this case created an exigent circumstance sufficient to justify the officers' warrantless entry into Flynn's apartment. As such, we conclude that substantial evidence of probative value exists to support the trial court's ruling and affirm the trial court's denial of Flynn's motion to suppress.[1]

[12] The judgment of the trial court is affirmed.

Robb, J., and Altice, J., concur.

---

[1] We are unconvinced by Flynn's claim that officers may only conduct a protective sweep following an arrest. While a protective sweep may, under some circumstances, be an acceptable way to ensure public and officer safety following an arrest, in this case, the protective sweep was intended to ensure Flynn's safety after she was reportedly involved in a domestic disturbance. Requiring officers to refrain from attempting to locate the co-participant in the domestic disturbance until an arrest has been made would be impractical and contrary to the general public policy of ensuring the safety of individuals involved in such disturbances.